Rhonda RAVIN, Plaintiff,

v.

**TEK CHEMICAL, INC., an Oregon corporation, Defendant.**

**No. CIV. 97–596–FR.**

United States District Court,
D. Oregon.

Jan. 14, 1998.

Robert A. Birk, Mendez Birk & Hanf, L.L.P., Portland, OR, for Plaintiff.

Gary V. Abbott, Abbott, Davis, Rothwell, Mullin & Earle, P.C., Portland, OR, for Defendant.

## OPINION

FRYE, District Judge.

The matter before the court is the defendant's motion for summary judgment (# 11).

## BACKGROUND

The plaintiff, Rhonda Ravin, brings this action against the defendant, TEK Chemical, Inc. (TEK), alleging that she was discriminated against on the basis of her race in violation of the Civil Rights Act of 1964 and O.R.S. 659.029 and 659.030.

## UNDISPUTED FACTS

Plaintiff Ravin is an African–American woman. She was hired as a shipping and receiving clerk by defendant TEK in April of 1992.

In June of 1994, Ravin was transferred at her request to the filling department of TEK.

In March of 1996, Jenny Horst, a white female employee of TEK, told Michael Cunneen, TEK's Human Resources/Operations Manager, that she was pregnant. She requested that Cunneen place her in a less physically demanding job assignment. Cunneen thereafter transferred Horst to a position in the administrative office.

In 1996, Ravin became pregnant. Her doctor suggested that she request a transfer to a position in the administrative office because her position in the filling department exposed her to chemicals.

On July 31, 1996, Ravin told Cunneen that she was pregnant and asked Cunneen to transfer her to a position in the administrative office.

On August 1, 1996, Cunneen transferred Ravin to a light duty position in the shipping and receiving department. The position to which she was transferred required her to be on her feet. Ravin was told that she had been transferred to the shipping and receiving department because there was no room for her in the administrative office.

On September 11, 1996, Ravin suffered a miscarriage. She was unable to work for a two-week period.

Linda Moore testifies in her affidavit as follows:

1. I am a former employee of Tek Chemical, Inc., and was there for 22 years until my separation around August 1, 1997. My position prior to separation was Sales Manager/Customer Service Director, and I had been active in management for Tek Chemical for years. Mike Cunneen was brought in and titled as human resources and operations manager before I left. Rhonda Ravin was an employee of Tek during my time there, as were Valerie O'Brien, Shelton Glass, Maggie Ballard, Jenny Horst, Laurie Teeter, Eleanor Butler and others.

2. Rhonda Ravin let Tek management know in the summer of 1996 that she was pregnant. During her pregnancy, I asked for Rhonda to be moved up into the office. During the time Jenny Horst and then Laurie Teeter were in the office, there was enough work to be done in the office to also bring in Rhonda Ravin. Rhonda was worried about her pregnancy. Mike Cunneen stated to me "I don't care if she loses the baby, she's not coming upstairs." He also referred to Rhonda Ravin as a "black bitch." He mentioned in the course of our management meetings that he wanted Rhonda Ravin to leave Tek Chemical's employ.

3. Mike Cunneen finally let Rhonda Ravin move into an office job, with Rhonda starting in the office in March, 1997. Rhonda's performance in our office while I was there was fine. But when I started to prepare an evaluation of Rhonda's job performance while she was in the work area under my supervision, Mike Cunneen undertook to prepare her evaluation personally, without my evaluation of her.

4. I also heard Mike Cunneen refer to Shelton Glass, an adult black male, as "boy." Mike Cunneen discussed during management meetings what Mike Cunneen was going to do with Mr. Glass to get rid of Mr. Glass from employment with Tek, like change Mr. Glass' position so that he would fail, or require him to take tests he was not expected to pass.

Affidavit of Linda Moore, pp. 1–3.

Eleanor Butler testifies in her affidavit as follows:

1. I am a former employee of Tek Chemical, Inc., and was there between approximately 6/92 and 2/97. My job included doing office help, taking orders over the phone, entering account receivable data on the computer, keeping attendance files, and doing front desk reception. Mike Cunneen was also a manager in human resources and operations at Tek during my employ there. Rhonda Ravin was an employee of Tek during my time there. Another employee there while I was, was Shelton Glass.

2. Rhonda Ravin and Shelton Glass are black, and I am also black.

3. When Rhonda Ravin was pregnant in the Summer of 1996, Mike Cunneen had her fill out a job analysis form to take to her doctor. Mike Cunneen did not require such a form to be prepared by Jenny Horst when Jenny was pregnant. Mike Cunneen just immediately moved Jenny into the office when she became pregnant. Mike did not move Rhonda Ravin into the office when Rhonda was pregnant.

4. After Jenny Horst was moved into the office, and later when Laurie Teeter replaced Jenny, there was plenty of work to be done which Rhonda Ravin could have done. Maggie Ballard, another worker in Tek's offices, had developed carpal tunnel symptoms, and the office was backed up with work to do. I had heard Mike Cun-

neen tell Maggie that Mike would not hire anyone to help her.

5. My work gave me access to personnel files Tek Chemical kept on its employees until late January, 1997. I observed that Mike Cunneen had added unfavorable comments to evaluations given to black employees at Tek. Employee raises and pay were tied to these evaluations.

Affidavit of Eleanor Butler, pp. 1–2.

Valerie O'Brien testified in her affidavit as follows:

1. I am a former employee of Tek Chemical, Inc., and was there during the mid–1990s. As I recall, I started there in early 1994. Mike Cunneen was also a manager in operations at Tek during my employ there. Rhonda Ravin was an employee of Tek and a co-worker of mine during my time there. Another employee there was Shelton Glass.

2. Rhonda Ravin and Shelton Glass are both blacks. I am a Native American.

3. During my employ at Tek Chemical, Mike Cunneen several times called me a "fat squaw" to my face. I also heard Mike Cunneen refer to Mr. Glass as a "nigger." Several times during my employ, I heard Mike Cunneen refer to Rhonda Ravin as a "black bitch."

4. Mike Cunneen told me to my face that he wanted me to quit my employ at Tek. Mike Cunneen said to me about Rhonda Ravin that "I will get rid of her any way I can." Although he gave Rhonda and I raises after our job evaluations, he gave Rhonda and me small raises while he gave larger raises to other workers.

Affidavit of Valerie O'Brien, pp. 1–2.

In October of 1996, Ravin filed a complaint with the Oregon Bureau of Labor and Industries claiming discrimination on the basis of race, sex and pregnancy.

In March of 1997, Ravin was transferred to the administrative office at TEK.

## CONTENTIONS OF TEK

TEK contends that the denial of a transfer of Ravin to the administrative office at TEK was not an adverse employment action because there is no contention that the transfer would have impacted her wages or other employee benefits. Assuming that the denial of Ravin's request to transfer to the administrative office was an adverse employment action, TEK contends that Ravin has no evidence that this denial was a result of any protected status and that there are legitimate, non-discriminatory reasons for the actions taken by TEK toward Ravin.

## CONTENTIONS OF RAVIN

Ravin contends that she was subjected to adverse actions in her working conditions; that she was treated differently from white employees; and that she has come forward with direct evidence that the decisionmaker for TEK was biased against her on the basis of her race.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact.

Once the initial burden of the moving party is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must make a sufficient showing on all essential elements of the case with respect to which the non-moving party has the burden of proof. *Id.*

The decision faced by the court is essentially the same decision faced by a court on a motion for a directed verdict—that is, whether the evidence on the motion for summary judgment presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If reasonable minds could differ as to the conclusions drawn from

the evidence in the record, the motion for summary judgment should be denied. *Id.*

## APPLICABLE LAW

In order to make a prima facie case of sexual discrimination under a theory of discriminatory treatment, the plaintiff employee must show, in addition to other factors, an adverse employment action and a difference in treatment in similarly situated persons who were not members of a protected class. If the plaintiff employee comes forward with evidence to establish a prima facie case, then the burden of production shifts to the employer to show legitimate, non-discriminatory reasons for the disparity. The plaintiff employee can then offer evidence that the proffered reason was not the true reason for the employment decision. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506–09, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

## RULING OF THE COURT

Plaintiff Ravin has come forward with evidence from which a trier of fact could conclude that she suffered an adverse employment action by defendant TEK because of her race. TEK's motion for summary judgment (# 11) is denied.